UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| BEECH TREE CORPORATION d/b/a ) | |
| THE COPPER BEECH INN and ) | |
| CBI ACQUISITION CORPORATION, ) | CASE NO. 09-32276 (LMW) |
| ) | CASE NO. 09-32277 (LMW) |
| ) | (Administratively Consolidated) |
| Debtors. ) | |
| ) | |

**ORDER AFTER INTERIM HEARING (1) AUTHORIZING DEBTORS-IN-POSSESSION TO OBTAIN FINANCING, GRANT SECURITY INTERESTS AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d); (2) AUTHORIZING THE USE OF FARMINGTON SAVINGS BANK'S CASH COLLATERAL AND GRANTING FARMINGTON SAVINGS BANK ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 (c)(2); (3) MODIFYING AUTOMATIC STAY; AND (4) GIVING NOTICE OF FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(a)(3), (b)(2) AND (c)(2)**

**This matter is before this Court on the Motion (the "***Motion***")** of CBI Acquisition Corporation ("*CBI*") and Beech Tree Corporation ("*BTC*"), as debtors and debtors-in-possession in the above captioned Chapter 11 cases (together, the "*Debtors*"), requesting entry of an interim order (1) authorizing the Debtors to obtain financing and other extensions of credit from an entity, Skiff Whitney Associates, LLC, a Connecticut limited liability company (in the capacity as post-petition lender, "*DIP Lender*"), grant security interests and liens and accord superpriority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d)(1) of Title 11 of the United States Code (the "*Bankruptcy Code*"); (2) authorizing the use of Farmington Savings Bank's cash collateral and granting Farmington Savings Bank adequate protection; (3) modifying the automatic stay; and (4) giving notice of the final hearing on the Motion pursuant to Bankruptcy Rules 4001(a)(3), (b)(2) and (c)(2).

**SUBJECT TO THE ENTRY OF OTHER FINDINGS, TERMS AND CONDITIONS THAT MAY APPEAR IN A FINAL ORDER HEREIN, AND BASED UPON THE STIPULATIONS AND AGREEMENTS OF THE DEBTORS, THE COURT HEREBY FINDS AND DETERMINES:**

A.  All findings and determinations set forth in the order of this court dated August 21, 2009 (the "DIP Order") approving the Debtors obtaining of financing and use of cash collateral are adopted and reaffirmed as if fully set forth herein.

B.  By assignment dated March 2, 2010 (the "Assignment"), Train Station, LLC (the "Original DIP Lender") assigned all its right, title and interest in and to the DIP Loan, as defined in the DIP Order, to the DIP Lender. The Debtors and FSB consent and acknowledge the Assignment. The DIP Lender is substituted in the place and stead of the Original DIP Lender in the DIP Order as if originally set forth therein.

C.  By Interim Order dated March 26, 2010 ("Interim Order"), the Court approved the terms of the Modification Agreement, as defined therein, authorizing the Debtors to increase the DIP Loan to $325,000 and to use up to $50,000 of the DIP Loan on an interim basis.

D.  The Debtors have requested authorization to use an additional $25,000 under the DIP Loan, under the same terms and conditions as originally set forth in the DIP Order and the Interim Order and the documents, instruments and agreements evidencing the DIP Loan (the "DIP Loan Documents"), as amended and modified by the modification and reaffirmation agreement dated March 29, 2010 and entered by Debtors and DIP Lender (the "Modification Agreement").

E.  <u>Need for Ongoing Financing</u>. An immediate and ongoing

need exists for the Debtors to obtain such additional financing to continue the operation of their businesses as debtors-in-possession under Chapter 11 of the Bankruptcy Code, to minimize disruption of the Debtors' businesses and to allow the Debtors to implement a plan of reorganization. Despite diligent efforts, the Debtors have been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code or financing in the form of credit secured by liens that are junior to existing liens on property of the estate pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code. The Debtors submit and represent that they are unable to obtain financing on terms more favorable than those offered under the DIP Facility.

F.   Interim and Final Hearings; Budget. Pursuant to Federal Rule of Bankruptcy Procedure 4001, the Debtors have requested in the Motion that this Court hold a final hearing to consider authorizing the Debtors to continue to obtain DIP Loans and other Credit Extensions for purposes specified in the Budget, as amended and produced at the final hearing on the Motion.

G.   Service of Motion. The Debtors have certified that copies of the Motion and a proposed order were served by electronic mail or telecopy transmission upon the United States Trustee, counsel for FSB and DIP Lender, and all parties who have filed requests for notices under

3

Rule 2002 of the Bankruptcy Rules, and that notice of the final hearing on the Motion will be served in accordance with the terms of this Interim Financing Order. This Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c).

H.  Finding of Cause. Good cause has been shown for the entry of this Order and authorization for the Debtors to continue to obtain additional financing pursuant to the Modification Agreement. The Debtors' need for the additional financing is immediate and critical. Entry of this Order will minimize disruption of the Debtors' businesses and operations, will preserve the assets of Debtors' estates and their value, and are in the best interests of the Debtors, their creditors and their estates. The terms of the proposed additional financing appear fair and reasonable, reflect the Debtors' exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

I.  Finding of Good Faith. Based upon the record presented at the Hearings, this Court finds that the Modification Agreement and related documents, as well as the terms of this Order, have been negotiated in good faith and at arm's length between the Debtors, on the one hand, DIP Lender and FSB, on the other hand. Therefore, all Credit Extensions heretofore made to Debtors pursuant to the DIP Loan Documents (as defined below) shall be deemed to have been made in

good faith within the meaning of Section 364(e) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1. <u>Affirmation of Terms of DIP Order</u>. The terms of the DIP Order and the Interim Order are hereby ratified and reentered as if fully set forth herein. Any and all objections that were timely filed to the Motion were either resolved at interim hearing on the Motion or, to the extent not withdrawn, waived or resolved, are hereby OVERRULED and DENIED.

2. <u>Authorization, Validity and Performance of DIP Financing Documents</u>. The DIP Loan Documents, as amended by the Modification Agreement (the "DIP Financing Documents") shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms. The Debtors are authorized and directed to do and perform all acts; to make, execute and deliver all instruments and documents, and to pay all filing and recording fees, in each case, as may be necessary to give effect to any of the terms and conditions of this Order.

3. <u>Scope of Superpriority Claim</u>. All obligations of Debtors to DIP Lender (the "DIP Obligations") shall have administrative priority in accordance with, and shall constitute an allowed superpriority claim (the "*Superpriority Claim*") pursuant to, Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Debtors' cases of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(e), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, provided, however, that the DIP Liens and DIP Obligations shall be subject and subordinate to fees payable pursuant to 28 U.S.C. § 1930 and other carve-outs for professionals previously ordered by the Court.

5

4. <u>Repayment</u>. Debtor shall repay the DIP Obligations in accordance with the DIP Financing Documents. The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim. In no event shall the Debtors be authorized to offset or recoup any amounts owed, or alleged to be owed, by DIP Lender to the Debtors or any of its subsidiaries or affiliates against any of the DIP Obligations unless and to the extent expressly otherwise agreed to in writing by DIP Lender.

5. <u>Survival of Order</u>. The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting these Chapter 11 cases from Chapter 11 to Chapter 7.

6. <u>Automatic Perfection of DIP Liens</u>. The DIP Liens granted pursuant to the DIP Order are valid, binding, enforceable and perfected and extend to the DIP Obligations without any requirement to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including, without limitation, possession of any of the Collateral) in order to validate the perfection of the DIP Liens. If DIP Lender shall, in its discretion, choose to file any such mortgages, agreements, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, the Debtors and their officers are directed to execute any documents or instruments as DIP Lender shall reasonably request, all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, and the Debtors shall pay or reimburse DIP Lender for the payment of any reasonable cost, fees or expenses (including, without limitation, recording taxes) payable in connection with the filing or recordation of any financing statements, mortgages, deeds of trust, security deeds or

other instruments or agreements. DIP Lender may, in its discretion, file a certified copy of this Order in any filing office in any jurisdiction in which the Debtors are organized or have or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Order for filing and recording. If and to the extent that FSB is in possession of any Collateral at any time, FSB shall serve as agent for DIP Lender for purposes of perfecting their respective security interests in and liens upon such Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

7. <u>DIP Loan and Cash Collateral</u>. In addition to the Debtors being authorized to use the entire available amount of the DIP Loan on an interim basis, the Debtors are also hereby permitted to use the Cash Collateral pursuant to the Budget annexed hereto as <u>Exhibit A</u>.

8. <u>Rights Cumulative</u>. The rights, remedies, powers and privileges conferred upon DIP Lender pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Financing Documents.

9. <u>Service of Order</u>. Promptly after the entry of this Order, the Debtors shall e-mail or mail, by first class mail, a copy of this Order to counsel for DIP Lender and FSB, the United States Trustee and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing.

10. <u>Inconsistencies</u>. To the extent that any provisions in the DIP Financing Documents are inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

11. <u>Effectiveness; Enforceability</u>. This Order shall take effect and be enforceable immediately upon entry hereof notwithstanding any contrary Federal Rule of Bankruptcy Procedure or Rule of Civil Procedure, and there shall be no stay of execution or effectiveness of this Order. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the DIP Order immediately upon execution hereof.

12. <u>DIP Facility, Interim Financing</u>. Failure of the Debtors to ecf/file a Revised and Amended Plan of Reorganization on or before April 27, 2010, 8:00 p.m. Eastern Time, shall result in the Debtors interviewing prospective business brokers.

13. A hearing to consider further Use of Cash Collateral and Financing shall be heard on <u>April 28, 2010 at 10:00 am., U.S. Bankruptcy Court, 157 Church Street, 18th Floor, New Haven, CT.</u>

DATED: April 16, 2010　　　　　　　　　　BY THE COURT
(*nunc pro tunc* to April 14, 2010)

　　　　　　　　　　　　　　　　　　　　　　　　　Lorraine Murphy Weil
　　　　　　　　　　　　　　　　　　　　　　　　Chief United States Bankruptcy Judge

8

**WORKOUT SOLUTIONS INC.**

Beech Tree Equity, LLC d/b/a The Copper Beech Inn Pro Forma / Projection
Irreparable Harm Budget
DIP Emergency Increase from
$ 300,00 to $ 325,00
REVISED AND AMENDED
4/14/10 1:20 pm

| | WEEK ENDING: | 27-Mar-10 | 3-Apr-10 | 10-Apr-10 | Period 27-Mar-10 - 10-Apr-10 | 17-Apr-10 | 24-Apr-10 | 5/1/2010 | |
|---|---|---|---|---|---|---|---|---|---|
| | Note | proj | proj | proj | | proj | proj | proj | |
| Cash Receipts | | | | | | | | | 1 |
| TOTAL CASH RECEIPTS | A | $ 25,830 | $ 33,730 | $ 30,125 | $ 89,685 | $ 40,475 | $ 35,815 | $ 30,025 | 2 |
| COST OF GOODS - VENDORS | | $ (8,100) | $ (7,900) | $ (7,900) | $ (23,900) | $ (7,900) | $ (8,000) | $ (8,300) | 3 |
| NET CASH RECEIPTS FOR THE WEEK | | $ 17,730 | $ 25,830 | $ 22,225 | $ 65,785 | $ 32,575 | $ 27,815 | $ 21,725 | 4 |
| OPERATING EXPENSES | | | | | $ - | | | | 5 |
| Credit Card Fees | B | $ - | $ (3,075) | $ - | $ (3,075) | | $ - | $ (3,425) | 6 |
| Restaurant Labor Cost | C | $ (4,400) | $ - | $ (4,400) | $ (8,800) | $ - | $ (4,400) | $ - | 7 |
| Kitchen Labor Cost | C | $ (7,500) | | $ (7,500) | $ (15,000) | | $ (6,500) | $ - | 8 |
| Innkeeping Labor Cost | C | $ (1,750) | $ - | $ (1,750) | $ (3,500) | $ - | $ (1,750) | $ - | 9 |
| Housekeeping | C | $ (1,000) | $ - | $ (1,000) | $ (2,000) | $ - | $ (1,000) | $ - | 10 |
| Breakfast | C | $ (650) | $ - | $ (650) | $ (1,300) | $ - | $ (650) | $ - | 11 |
| Payroll Taxes & Payroll Expense | | $ (2,500) | $ - | $ (2,500) | $ (5,000) | $ - | $ (2,500) | $ - | 12 |
| Officer Salaries | D | $ (2,692) | $ (1,846) | $ (1,846) | $ (6,384) | $ (1,846) | $ (1,846) | $ (1,846) | 13 |
| Advertising Expense | | $ (1,250) | $ (1,500) | $ (1,300) | $ (4,050) | $ (1,300) | $ (2,000) | $ (1,800) | 14 |
| Professional Fees | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 15 |
| Marketing Expense - LTM | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 16 |
| General & Administrati | E | $ (1,125) | $ (1,125) | $ (1,125) | $ (3,375) | $ (1,125) | $ (1,125) | $ (1,350) | 17 |
| AT&T Arrearage | F | $ - | $ (550) | $ - | $ (550) | $ - | $ - | $ - | 18 |
| AIM (Innkeeper) | G | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 19 |
| Utilities | H | $ (1,257) | $ (1,500) | $ (6,500) | $ (9,257) | $ (1,500) | $ (1,500) | $ (750) | 20 |
| CL&P Arrearage | I | $ (6,257) | $ (1,860) | $ - | $ (8,117) | $ (1,177) | $ - | $ (1,020) | 21 |
| Equipment Leasing | | $ - | $ (750) | $ - | $ (750) | $ (750) | $ (750) | $ - | 22 |
| Insurance | | $ (3,100) | $ - | $ - | $ (3,100) | $ (2,800) | $ (3,100) | $ - | 23 |
| Maintenance | J | $ (950) | $ (1,150) | $ (950) | $ (3,050) | $ (950) | $ (950) | $ (950) | 24 |
| Laundry | | $ (450) | $ (450) | $ (450) | $ (1,350) | $ (450) | $ (750) | $ (450) | 25 |
| Sales & Occupancy Tax Escrow | | $ (1,350) | $ (1,350) | $ (1,350) | $ (4,050) | $ (1,350) | $ (1,350) | $ (1,350) | 26 |
| Total Operating Expenses | | $ (36,231) | $ (15,156) | $ (31,321) | $ (82,708) | $ (13,248) | $ (30,171) | $ (12,941) | 27 |
| | | | | | $ - | | | | 28 |
| SUB-TOTAL CASH | | $ (18,501) | $ 10,674 | $ (9,096) | $ (16,923) | $ 19,327 | $ (2,356) | $ 8,784 | 29 |
| OTHER EXPENSES | | | | | $ - | | | | 30 |
| Gift Cards Redeemed | | $ (1,325) | $ (1,350) | $ (1,200) | $ (3,875) | $ (1,200) | $ (1,400) | $ (1,250) | 31 |
| Customer Deposits Used | | $ (1,700) | $ (1,500) | $ - | $ (3,200) | $ (1,250) | $ (2,000) | $ (200) | 32 |
| Other Expenses | K | $ (600) | $ (600) | $ (600) | $ (1,800) | $ (600) | $ (600) | $ (600) | 33 |
| Bookkeeping & Accoun | L | | | | $ - | | $ - | | 34 |
| Workout Solutions | L | | | | $ - | | $ - | | 35 |
| Zeisler & Zeisler | L | | | | $ - | | $ - | | 36 |
| US Trustee Fee Arreara | M | | $ (6,514) | | $ (6,514) | | $ (5,500) | | 37 |
| First Whitney Assoc. | N | | $ (2,083) | | $ (2,083) | | $ (2,708) | | 38 |
| Total Other Expenses | | | | | $ - | | | | 39 |
| Legal Fees to Document DIP Modification | | | $ (4,000) | | $ (4,000) | $ (1,000) | | | 40 |
| Unfunded Payroll Tax Liability Period 3/11/10 | | | $ (6,000) | | $ (6,000) | | | | 41 |
| DIP FUNDING | | | | | $ - | | | | 42 |
| Skiff Whitney Assoc. | N | | $ 50,000 | | $ 50,000 | $ 25,000 | | | 43 |
| NET CASH CHANGE FOR THE WEEK | | $ (22,126) | $ 38,627 | $ (10,896) | $ 5,605 | $ 40,277 | $ (14,564) | $ 6,734 | 44 |
| CUMULATIVE: | | $ (20,926) | $ 17,701 | $ 6,805 | $ 3,579 | $ 47,082 | $ 32,518 | $ 39,252 | 45 |

Total Cost of Goods and Operating Expen $ 47,956 $ 45,103 $ 41,021 $ 134,080

Notes
A - Calculation based on existing room and dining reservations as well as prior years activity
B - CC fees assessed monthly by Heartland Processing and are a factor of sales
C - Detailed labor cost schedules are available
D - Owner compensation per agreement with FSB
E - Includes AT&T current
F - Includes complete repayment of AT&T arrearage
G - AIM management relationship has been terminated
H - Includes CL&P current
I - Includes complete repayment of CL&P arrearage
J - Includes hourly rate of "handy man"
K - Other expense - food and beverage comps
L - Is "post-plan" compensation agreement with FSB
M - Brings Trustee Fees current thru to March 31, 2010
N - Skiff Whitney Associates, LLC is replacement DIP Lender / Closing Adjustment Item

Only change:

Chief Restructuring Officer

Kevin S. Tierney    4/14/2010