UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

In re:

| | | |
|---|---|---|
| BEECH TREE CORPORATION d/b/a | : | CHAPTER 11 |
| COPPER BEECH INN and | : | CASE NO. 09-32276 |
| CBI ACQUISITION CORPORATION, | : | CASE NO. 09-32277 |
| | : | Jointly Administered |
| Debtors | : | |

**DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION FOR BEECH TREE
CORPORATION D/B/A COPPER BEECH INN
AND CBI ACQUISITION CORPORATION**

**1.    INTRODUCTION**

This Third Amended Plan (the "Plan") is the proposal of Beech Tree Corporation d/b/a

Copper Beech Inn and CBI Acquisition Corporation to their Creditors and the holders of Equity

Interests pursuant to Section 1121(a) of the Bankruptcy Code.

**2.    DEFINITIONS**

The following terms, when used in this Plan, shall have the following meanings as set forth

below:

Administrative Claim.    Means a claim for payment of an administrative expense of a kind

specified in Section 503(b) of the Code and referred to in Section 507(a)(1) of the Code, including,

without limitation, the actual and necessary costs and expenses incurred after the commencement of

the Chapter 11 Cases of preserving the estate and operating the business of the Debtors, including

wages, salaries or commissions for services, compensation for legal and other services and

reimbursement of expenses awarded under Section 330(a) or 331 of the Code, and all fees and

charges assessed against the estates under 28 U.S.C. § 1930.

<u>Allowed</u>.    When used in connection with any type of "Claim" or "Equity Interest", means: (a) a Claim or Equity Interest, proof of which was timely filed pursuant to the Orders of the Bankruptcy Court establishing the applicable "bar dates" for the filing of Claims against the Debtors, and, as to which no timely objection to allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to any such timely objection a Final Order of allowance has been entered; (b) a Claim or Equity Interest allowed by a Final Order; (c) a Claim or Equity Interest listed in either of the Debtor's Schedules filed in connection with the Chapter 11 Cases and not identified as contingent, unliquidated or disputed; (d) a Claim or Equity Interest which is fixed and agreed to in amount in writing between the Debtors and any Claimant and allowed by a Final Order or (e) any Claim which is deemed an Allowed Claim pursuant to the provisions of this Plan.

<u>Allowed Secured Claim</u>.    Means an Allowed Claim arising on or before the Petition Date (August 19, 2009) that is secured by a valid Lien on property of either of the Debtors which is not void or voidable under any state or federal law, including any provision of the Code or an Allowed Claim for which the holder asserts a setoff under Section 553 of the Code, to the extent of the value (which is either agreed to by either Debtor pursuant to this Plan, or in the absence of an agreement, has been determined in accordance with Section 506(a) or 1111(b) of the Code) of the interest of the holder of such Allowed Claim in either of the Debtor's property, or an Allowed Claim that is treated as an Allowed Secured Claim pursuant to this Plan.  That portion of such Allowed Claim exceeding the value of security held therefore shall be an Allowed Unsecured Claim.

<u>Allowed Unsecured Claim</u>.    Means an Allowed Claim which is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

2

Ballot.  Means the ballot accompanying the Disclosure Statement upon which holders of Impaired Claims or Impaired Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

Bankruptcy Court.    Means the United States Bankruptcy Court for the District of Connecticut, or such other Court as may hereafter have jurisdiction over the Debtors' Chapter 11 Cases.

Bankruptcy Rules.  Means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

Beech Tree Corporation d/b/a Copper Beech Inn.  Means Beech Tree Corporation d/b/a Copper Beech Inn and the Debtor in Case No. 02-50156.

Business Day.  Means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

CBI.  Means CBI Acquisition Corporation and the Debtor in Case No. 09-32277.

Cash.    Means currency of the United States of America, or checks payable in immediately available funds of such currency.

Chapter 11 Cases.  Means the above-captioned, jointly administered Chapter 11 bankruptcy cases of the Debtors.

Claim.    Has the meaning set forth in Section 101(5) of the Code.

Class.    Means Claims or Equity Interests which are substantially similar to the other Claims or Equity Interests in such Class as classified pursuant to Section 4 of the Plan.

Code.    Means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the case.

Confirmation Date.   Means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket maintained by the clerk's office.

Confirmation Hearing.   Means the hearing at which the Bankruptcy Court considers confirmation of the Plan pursuant to Sections 1128 and 1129 of the Bankruptcy Code.

Confirmation Order.   Means the order entered by the Bankruptcy Court confirming the Plan in accordance with Chapter 11 of the Code.

Consummation.   Means the occurrence of the Effective Date.

Debtors or Debtors in Possession.   Means Beech Tree Corporation d/b/a Copper Beech Inn and CBI Acquisition Corporation.

Disallowed Claim.   Means any Claim or portion thereof:

(a)   which is scheduled or proof of which is filed and an objection thereto has been sustained by a Final Order; or

(b)   which is scheduled as disputed, contingent or unliquidated and as to which either (i) no proof of claim has been timely filed, or (ii) proof of which has been timely filed and an objection thereto has been sustained by a Final Order.

Disclosure Statement.   Means the Debtors' disclosure statement of even date herewith relating to the Plan and any amendments thereto.

Disputed Claim.   Means (i) every Claim that is scheduled by the Debtors as disputed, contingent or unliquidated, or (ii) every Claim, proof of which is filed and against which an objection to the allowance thereof has been interposed, which objection has not been determined by a Final Order, except for any Claim which is deemed an Allowed Claim by the provisions of this Plan.

4

Distribution Date.  Means the later of (i) the Effective date or within ten (10) days thereafter; (ii) the date by which an Allowed Claim is paid hereunder if other than the Effective Date, or (iii) within twenty (20) days after the date on which a Disputed Claim becomes an Allowed Claim.

Effective Date.   Means the first Business Day occurring on or after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) all the conditions to the effectiveness of the Plan have been waived or satisfied as provided in Section 1 of the Plan.

Equity Interest(s).   Means any "equity security" of the Debtors, as that term is defined in Section 101(16) of the Bankruptcy Code.

Final Order.  Means an order or judgment of the Bankruptcy Court as entered on the docket in the Chapter 11 Cases, or the order or judgment of any other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed or amended, and as to which order or judgment the time to appeal or to seek review has expired and as to which no appeal or petition for review was filed or, if filed, remains pending.

Lien.  Means any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Code.

Objection Deadline.  Means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of Claims, which date shall be (i) for Administrative Claims, the date that is thirty (30) days after a request for payment of such Claim has been filed and (ii) for all other Claims, the date that is 90 days after the Effective Date.

Person.  Means any individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint

stock company, joint venture, estate, trust, unincorporated organization, government or any agency or political subdivision thereof or other entity.

Petition Date.  Means August 19, 2009, the date on which the Debtors filed their petitions commencing their respective Chapter 11 Cases.

Plan: Means this Plan of Reorganization of Beech Tree Corporation d/b/a Copper Beech Inn and CBI Acquisition Corporation proposed by the Debtors (including all documents and supplements related hereto) either in its present form or as it may hereafter be altered, amended or modified from time to time.

Plan Documents: Means all the documents that aid in effectuating the Plan, substantially in the forms filed with the Bankruptcy Court prior to the Confirmation Hearing, as the same may be amended or modified, including, without limitation, New Senior Secured Notes, Certificate of Designation of New Common Stock and the Shareholder Agreement.

Priority Non-Tax Claim.  Means any Claim that is entitled to priority in payment pursuant to Sections 507(a)(3), (4), (5), (6), (7) or (9) of the Code and that is not an Administrative Claim or a Priority Tax Claim.

Priority Tax Claim.  Means an Allowed Claim which is entitled to priority pursuant to Section 507(a)(8) of the Code.

Professional Person.  Means any Person retained or to be retained or to be compensated by the Debtors pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Code.

Pro Rata Share.  Means the proportion that an Allowed Claim or Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Equity Interests in such Class, calculated in accordance with the provisions of this Plan.

Reorganized Debtor. Means the Debtors on and after the Effective Date.

Secured Claims. Means a claim secured by a lien on collateral to the extent of the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtors or (c) as determined by a Final Order in accordance with Section 506(a) of the Bankruptcy Code, or in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**3.    ADMINISTRATIVE CLAIMS, TAX PRIORITY CLAIMS, AND PRIORITY NON-TAX CLAIMS (UNCLASSIFIED CLAIMS)**

3.1    Administrative Claims.  (a)  All post-petition payables and other ordinary course expenses shall be paid in the ordinary course of business as agreed between the respective vendors and the Debtors and/or Reorganized Debtor. (b) Other Administrative Claims filed prior to the Confirmation Date other than claims of Professional Persons, unless objected to by the Effective Date, which have not been paid prior to the Effective Date shall be paid in full in Cash on the Distribution Date or upon such terms as otherwise agreed between the Debtors and the holder of such Administrative Claim.  (c) Professionals Persons, and any other Person who may be entitled to reimbursement of expenses or allowance of fees pursuant to Sections 503(b)(2) through 503(b)(6) of the Code, shall file final applications for allowance and payment of compensation and expenses not later than twenty (20) days after the Effective Date.  Each such Person shall be paid, in Cash, the full amount awarded by the Bankruptcy Court after notice and a hearing, within 10 days after the date on which an Order allowing such claims, fees and/or disbursements becomes a Final Order.

3.2    Priority Tax Claims. Except to the extent that a holder of an Allowed Priority Tax Claim has agreed to different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on account of such claim deferred cash payment with interest at the fixed rate of twelve percent (12%) per annum over a five year period.  The first of such deferred cash

payments shall be made on the Distribution Date, and thereafter shall be made on the anniversary of the Distribution Date in each succeeding year up to an including the fifth anniversary of the Petition Date. The Reorganized Debtor reserves the right to pre pay all Allowed Priority Tax Claims.

    3.3   <u>Priority Non-Tax Claims.</u>  Allowed Priority Non-Tax Claims shall be paid, in Cash, in full on the Distribution Date.

    3.4   <u>U.S. Trustee Fees.</u>  In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, all quarterly fees payable to the United States Trustee shall be paid by the debtor in full on or before their respective due dates and shall continue to be assessed and paid until such time as a final decree closing, converting or dismissing this case is entered by the Court.

## 4. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

All Claims against and Equity Interests in the Debtors, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions with either of the Debtors and all equity interests arising from the ownership of the stock of either of the Debtors, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan. The Claims and Equity Interests are classified as follows:

**Class 1 The Allowed Secured Claims of Skiff Whitney Associates, LLC**

**Class 2 Allowed Secured Claim of Farmington Bank (the original first mortgage and Line of Credit)**

**Class 3 Allowed Secured Claim of Farmington Bank (the original second mortgage with a 75% SBA loan guarantee)**

**Class 4 Allowed Secured Claim of Donald E. Perry (Farmington Bank)**

**Class 5 The Allowed Secured Claim of Town of Essex**

**Class 6  The Allowed Secured Claim of State of Connecticut Department of Revenue Services**

**Class 7 The Allowed Secured Claim of State of Connecticut Department of Labor**

**Class 8  Allowed Unsecured Claims of Beech Tree Equal to or Less Than $5,000**

**Class 9  Allowed Unsecured Claims of CBI Acquisition Equal to or Less Than $5,000**

**Class 10  Allowed Unsecured Claims of Beech Tree More Than $5,000**

**Class 11  Allowed Unsecured Claims of CBI Acquisition More Than $5,000**

**Class 12 Allowed Unsecured Claims of Ian Phillips against Beech Tree and White Farm Corporation against CBI**

**Class 13 Allowed Equity Interests of Ian Phillips in Copper Beech**

**Class 14 Allowed Equity Interests of Ian Phillips in CBI**

**5.     IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS**

5.1   <u>Impaired Classes of Claims</u>.  All Classes of Claims are impaired under the Plan.

5.2   <u>Impaired Classes of Equity Interests.</u>  All Classes of Equity Interests are impaired under the Plan.

5.3   <u>Impairment Controversies.</u>  If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or of Equity Interests, are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

5.4   <u>Special Note Concerning Voting on Plan</u>. In the event there is a sub class, each subclass will be considered a separate class for voting purposes.

**6. TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

<u>Class 1 The Allowed Secured Claims of Skiff Whitney Associates, LLC</u>

1.     Approximate Amount: $325,000
2.     Unimpaired

3. <u>Treatment</u>: The Debtors intend to presently continue to make the regular monthly payment obligations on this line of credit in accordance with the tenor of the underlying note securing this obligation. This creditor shall retain its lien on the Debtors' Property until its claim has been satisfied. Notwithstanding the foregoing, the Debtors shall be and are hereby authorized to prepay the allowed secured claim of this creditor without any penalty and to continue to borrow and repay up to the full amount of $325,000, line of credit.

<u>Class 2 Allowed Secured Claim of Farmington Bank (the Original First Mortgage Loan and Line of Credit)</u>

1. Approximate Amount: $2,362,931.51

2. Impaired

3. <u>Treatment</u>: The allowed secured claim of Farmington Bank shall bear interest at the fixed rate of seven and sixty one hundredths percent (7.61%) per annum and shall be payable in monthly installments of interest only commencing August 1, 2010 and continuing up to and including July 1, 2012, and thereafter, in equal monthly installments of principal and interest, in the amount of $20,749.15, commencing August 1, 2012 and continuing until August 1, 2015. Notwithstanding anything herein to the contrary, the balance of the Allowed Secured Claim, including interest, accrued interest, fees, expenses and attorneys' fees shall be paid on or before August 1, 2015. Farmington Bank shall defer all principal and interest on its Allowed Secured Claim until July 1, 2010. Farmington Bank shall retain its lien on the Debtors' real property, leases, rents and income and its assets until its claim has been satisfied in full. Notwithstanding the foregoing, the Debtors shall be and are hereby authorized to prepay the allowed secured claim of this creditor without any penalty. The Debtors and any authorized agents, officers and/or directors shall execute and modify any documents reasonably related to Loan Nos. 6-10165 and 6-12494 to comport with amended treatment under the confirmed Plan. The Debtors shall escrow real property taxes in separate account being held at Bank of America.

<u>Class 3 Allowed Secured Claim of Farmington Bank (the original second mortgage with a 75% SBA loan guarantee)</u>

1. Approximate Amount: $1,338,512.54

2. Impaired

3.    <u>Treatment</u>:  The allowed secured claim of Farmington Bank shall bear interest at the fixed rate of four and one half percent (4.5%) per annum and shall be payable in monthly installments of interest only for the period commencing August 1, 2010 and continuing up to and including July 1, 2012 and, thereafter, in equal monthly installments of principal and interest in the amount of $7,586.79 commencing August 1, 2012 and continuing until August 1, 2015.  Notwithstanding anything herein to the contrary, the balance of the Allowed Secured Claim including interest, fees, expenses and attorneys' fees shall be paid in full on or before August 1, 2015 (or thereafter on the same date as the Class 2 Allowed Secured Claims shall be due and payable if maturity therefore has been extended by Farmington Bank).  Farmington Bank shall retain its lien on the Debtors' real property, leases, rents and income and its assets until its claim has been satisfied in full.  Notwithstanding the foregoing, the Debtors shall be and are hereby authorized to prepay the allowed secured claim of this creditor without any penalty. The Debtors and any authorized agents, officers and/or directors shall execute and modify any documents related to Loan No. 6-12712 to comport with the amended treatment under the confirmed Plan.

<u>Class 4 Allowed Secured Claim of Donald E. Perry (Farmington Bank)</u>

1.    Approximate Amount: $448,635.27

2.    Impaired

3.    <u>Treatment</u>:  Donald E. Perry's secured claim has been assigned to Farmington Bank.  Commencing on the later of one month after the effective date of the Plan or August 1, 2010, the Debtors will pay Farmington Bank interest only on the first $299,867.50,000 of this allowed secured claim at the fixed rate of six percent (6%) per annum as of the Confirmation Date until July 1, 2012.  The balance of this portion of the claim shall then be amortized over twenty (20) years effective August 1, 2012 with the first mortgage payment on August 1, 2015.  The balance of the allowed secured claim of Donald E. Perry (estimated at approximately $148,635) shall then begin to accrue interest at the fixed rate of seven percent (7%) per annum but there will be no payment as long as all prior secured debt is outstanding. The balance will be due and payable on September 1, 2015.  Donald E. Perry or assignee real property, leases, rents and income and its assets until its claim has been satisfied in full. Notwithstanding the foregoing, the Debtors shall be and are hereby authorized to prepay the allowed secured claim of this creditor without any penalty.  The Debtors and any authorized agents, officers and/or directors and Donald E. Perry shall execute and modify any documents related to Loan No. 6-12494 to comport with amended treatment under the confirmed Plan.

<u>Class 5 The Allowed Secured Claim of Town of Essex</u>

1.    Approximate Amount: $15,115.98

2.    Impaired

3.    <u>Treatment</u>:  The allowed secured claim of the Town of Essex shall be paid in equal
monthly installments over 53 months commencing on the first month after the at the later
of July 1, 2010 or one month after the Effective Date with interest at the applicable
nonbankruptcy rate per annum on the principal outstanding balance.  This creditor shall
retain its lien on the Debtors' Property until its secured claim has been satisfied.
Notwithstanding the foregoing, the Debtors shall be and are hereby authorized to prepay
the allowed secured claim of this creditor without any penalty.

Class 6 The Allowed Secured Claim of State of Connecticut Department of Revenue Services

1.    Approximate Amount: $89,055.00

2.    Impaired

3.    <u>Treatment</u>:   The allowed secured claim of the <u>State of Connecticut Department of
Revenue Services</u> shall be paid in equal monthly installments over 53 months
commencing on the later of June 1, 2010 or one month after the Effective Date with
interest at the fixed value of twelve percent (12%) per annum on the principal outstanding
balance.  The creditor shall retain its lien on the Debtors' Property until its secured claim
has been satisfied.  Notwithstanding the foregoing, the Debtors shall be and are hereby
authorized to prepay the allowed secured claim of this creditor without any penalty.

Class 7 The Allowed Secured Claim of State of Connecticut Department of Labor

1.    Approximate Amount: $3,279.00

2.    Impaired

3.    <u>Treatment</u>:  The allowed secured claim of the State of Connecticut Department of Labor
shall be paid in equal monthly installments commencing on the first month after the
Effective Date for fifty-three (53) months at the fixed rate of 12% from the Petition Date..
This creditor shall retain its lien on the Debtors' Property until its claim has been
satisfied.  Notwithstanding the foregoing, the Debtors shall be and are hereby authorized
to prepay the allowed secured claim of this creditor without any penalty.

Class 8  Allowed Unsecured Claims of Beech Tree Equal to or Less Than $5,000

1.    Approximate Amount: $79,430.00

2.    Impaired

3.    Treatment:  On the Effective Date, the holders of Allowed Unsecured Claims in this Class is the "Convenience Class" representing holders of unsecured claims of $5,000 or less.  At the option of each Convenience Class creditor which must be tendered in writing to the Debtors within 30 days after the Confirmation Date, these claimants shall have the option of receiving in full satisfaction of their claims (i) ten (10%) of the of their allowed unsecured claim as a one-time cash payment or (ii) thirty five percent (35%) of their allowed unsecured claim payable with no interest in five equal seven (7%) percent annual payments due on June 30 of each year, with the first payment due on June 30, 2010. In the event no election is timely received by a holder of a Convenience Class Claim, the Debtor may exercise the option for such claim.

Class 9  Allowed Unsecured Claims of CBI Acquisition Equal to or Less Than $5,000

1.    Approximate Amount: $8,811.70

2.    Impaired

3.    Treatment:  On the Effective Date, the holders of Allowed Unsecured Claims in this Class are the "Convenience Class" representing holders of unsecured claims of $5,000 or less.  At the option of each Convenience Class creditor which must be tendered in writing to the Debtors within 30 days after the Confirmation Date, these claimants shall have the option of receiving in full satisfaction of their claims (i) ten (10%) of the of their allowed unsecured claim as a one-time cash payment or (ii) thirty five percent (35%) of their allowed unsecured claim payable with no interest in five equal seven (7%) percent annual payments due on June 30 of each year, with the first payment due on June 30, 2010. In the event no election is timely received by a holder of a Convenience Class Claim, the Debtor may exercise the option for such claim.

Class 10  Allowed Unsecured Claims of Beech Tree More Than $5,000

1.    Approximate Amount: $100,702.00

2.    Impaired

3.    Treatment:  Holders of Allowed Claims in this Class whose face claim exceeds $5,000 shall receive thirty-five percent (35%) of the face claim payable without interest in five equal seven percent (7%) annual payments due on June 30 of each year, with the first payment due on July 30, 2010. Notwithstanding the foregoing, the Reorganized Debtors shall be and is hereby authorized to prepay the allowed unsecured claim of this creditor without any penalty. The Reorganized Debtors reserve the right to prepay any of these Plan Payments to each and/or all of these creditors in this class under the Plan without penalty and, in the event of a prepayment, the Reorganized Debtors may discount each such prepayment at a rate of six percent (6%) per annum.

13

## Class 11  Allowed Unsecured Claims of CBI Acquisition More Than $5,000

1.    Approximate Amount: $29,600.00

2.    Impaired

3.    <u>Treatment</u>:  Holders of Allowed Claims in this Class whose face claim exceeds $5,000 shall receive thirty-five percent (35%) of the face claim payable without interest in five equal seven percent (7%) annual payments due on June 30 of each year, with the first payment due on July 30, 2010.  Notwithstanding the foregoing, the Reorganized Debtors shall be and is hereby authorized to prepay the allowed unsecured claim of this creditor without any penalty. The Reorganized Debtors reserve the right to prepay any of these Plan Payments to each and/or all of these creditors in this class under the Plan without penalty and, in the event of a prepayment, the Reorganized Debtors may discount each such prepayment at a rate of six percent (6%) per annum.

## Class 12  Allowed Unsecured Claims of Ian Phillips against Beech Tree and White Farm Corporation against CBI Acquisition

1.    Approximate Amount: $1,322,876

2.    Impaired

3.    <u>Treatment</u>:  This Class is the Allowed Insider Unsecured Claims for Ian Phillips and White Farm Corporation in the aggregate amount of $1,322,876.  To enhance the rehabilitative effort and as <u>a contribution to the estate</u>, the two claimants in this Class shall <u>receive no payment</u> on account of their claims <u>until all distributions</u> to <u>Class 9 and 10 under the Plan have been made</u> provided this Plan is confirmed and the claims referred in <u>Classes 2, 3 and 4 have been paid in full</u>.

## Class 13 Allowed Equity Interests of Ian Phillips in Beech Tree

1.    Approximate Amount:

2.    Unimpaired

3.    <u>Treatment</u>:  This Class is consists of the Equity Interest of Ian Phillips, the sole shareholder of Beech Tree.  Ian Phillips will retain his interest in the Debtor in exchange for his contributions regarding the deferral set forth in Class 12.  Ian Phillips or any owners of the Debtors or insiders shall not be allowed salaries but shall not be allowed to take any dividend, distribution, interest income, fees, commissions, bonuses or advances from the Debtors until Classes 2, 3 and 4 have been paid in full.

Class 14 Allowed Equity Interests of Ian Phillips in CBI

1.      Approximate Amount:

2.      Unimpaired

3.      Treatment:   This Class is consists of the Equity Interest of Ian Phillips, the sole
shareholder of Beech Tree.  Ian Phillips will retain his interest in the Debtor in exchange
for his contributions regarding the deferral set forth in Class 12.  Ian Phillips or any
owners of the Debtors or insiders shall be entitled to their salaries and related benefits but
shall not be allowed to take any dividend, distribution, interest income, commissions, or
advances from the Debtors until Classes 2, 3 and 4 have been paid in full.


**8.      MEANS FOR FUNDING OF THE PLAN**

8.1   Funding of Payments Required Under the Plan. The payments required under the

Plan will be made from the Debtors' and Reorganized Debtors' operations. Notwithstanding

anything herein to the contrary, Beech Tree will be the primary conduit for all Plan payments.

**8.2   Kevin S. Tierney and Workout Solutions, Inc. will continue to act as the
CRO's of the Debtors post confirmation in a manner consistent with their retention
approved by the bankruptcy court during the pendency of the cases.**

**9.      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) General Assumption and Assignment.  All executory contracts and unexpired leases

of CBI or Beech Tree shall be assumed by Reorganized Debtor upon entry of the Confirmation

Order unless specifically modified and assumed by agreement with the Lessor or contractive

party or rejected by order entered on or prior to the Confirmation Date or unless a motion to

reject any such executory contract or unexpired lease is pending before the Bankruptcy Court on

the Confirmation Date.

(b) Bar to Rejection Damages.  If the rejection of an executory contract or unexpired

lease by either of the Debtors results in damages to the other party or parties to such contract or

lease, a Claim for such damages, if not previously evidenced by a filed proof of Claim or barred by a Final Order, shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtor, or their properties or agents, successors, or assigns, unless a proof of Claim relating thereto is filed with the Bankruptcy Court within thirty (30) days after the later of (i) the entry of a Final Order authorizing such rejection and (ii) the Confirmation Date, or within such shorter period as may be ordered by the Bankruptcy Court.

(c) Cure of Defaults for Executory Contracts and Unexpired Leases. Each executory contract and unexpired lease to be assumed pursuant to the Plan shall be reinstated and rendered unimpaired in accordance with sections 1124(2) and 365(b)(1) of the Code. In connection therewith, Reorganized Debtor obligated on each such contract and lease to be assumed pursuant to the Plan shall cure or provide adequate assurance that it will cure any monetary default (other than of the kind specified in section 365(b)(2) of the Bankruptcy Code), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree, compensate, or provide adequate assurance that the Reorganized Debtor will promptly compensate, parties to such contract or lease for any actual pecuniary loss to such parties resulting from such default and provide adequate assurance of future performance under such contract or lease. In the event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of Reorganized Debtor or any of its assignees to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments or performance required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

10.    **PROVISIONS GOVERNING DISTRIBUTIONS**

10.1 <u>Payments</u>.  Except as otherwise provided in this Plan or ordered by the Court, all payments required under the Plan to Creditors in all Classes will be made on the Effective Date of Plan.

10.2 <u>Unclaimed Distributions</u>.

a.    <u>Escheat to Debtor</u>.    Payments by or on behalf of the Debtors or the Reorganized Debtor, sent to holders of Allowed Claims or other parties in interest pursuant to this Plan shall permanently and irrevocably escheat to Reorganized Debtor and shall not be honored if (i) returned as undeliverable or (ii) uncashed within one hundred and eighty (180) days after the Effective Date, or payment.  Upon the expiration of such  one hundred eighty day period, the Debtors' and Reorganized Debtor's obligation and liability to any holder of an Allowed Claim or other party in interest whose distribution are returned as undeliverable or has not been acknowledged or cashed shall be deemed satisfied in full and the Debtors and Reorganized Debtor and their respective attorneys, agents, employees, directors and officers shall be forever released and discharged from any liability or obligation whatsoever to that creditor or party in interest.  For purposes of this section, payments made under the Plan shall be conclusively deemed appropriately delivered to a creditor or party in interest if it is sent by first class, postage prepaid, mail to the address of that creditor or party in interest as set forth on the Debtors' schedules, the proof of claim register in the above-captioned cases, or the Debtors' books and records.

b.    <u>After Distributions Become Undeliverable</u>.  (i) Uncashed or undeliverable payments made by the Debtor shall not be entitled to any interest, dividends or other accruals of any kind.

17

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if

not negotiated within 180 days after the date of issuance thereof. Requests for reissuance of any

check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with

respect to which such check originally was issued. Any claim in respect of such a voided check

shall be made on or before the later of (i) the first anniversary of the Effective Date; or (ii) ninety

(90) days after the date of issuance of such check. After such date, all Claims in respect of void

checks shall be discharged and forever barred.

## 11.    PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS AND EQUITY INTERESTS

11.1  <u>Objection Deadline</u>.   As soon as practicable, but in no event later than   the

Objection Deadline, objections to Disputed Claims shall be filed with the Bankruptcy Court and

subsequently served upon the Holders of each of the Disputed Claims.

11.2  <u>Responsibility for Objection to Disputed Claims and Prosecution of Objections</u>.

Reorganized Debtor shall have the exclusive responsibility for objecting to Claims following the

Confirmation Date.  On and after the Confirmation Date, except as the Bankruptcy Court may

otherwise order, the filing, litigation, settlement, or withdrawal of all objections to Disputed

Claims shall be the responsibility of Reorganized Debtor.

11.3  <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision of the

Plan, no payments or distributions shall be made with respect to a Disputed Claim unless and

until all objections to such Disputed Claim have been determined by Final Order.

11.4  <u>Distribution After Allowance</u>.   Distributions from Reorganized Debtor to each

Holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be

made in accordance with the provisions of the Plan governing the Class of Claims to which the

Disputed Claim belongs.   As soon as practicable after the date the order of judgment of the

Bankruptcy Court allowing such Claim becomes a Final Order, but in no event later than twenty

(20) days after such Claim becomes an Allowed Claim, any consideration that would have been

distributed in respect of the Disputed Claim had it been an Allowed Claim at the Effective Date

shall be distributed, without interest, to the Holder of such Claim.

11.5   Treatment of Contingent Claims.   Until such time as a Contingent Claim becomes

fixed and absolute, such Claim shall be treated as a Disputed Claim for purposes related to

estimations, allocations, and distributions under the Plan.

## 12.   CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

12.1   Conditions to Confirmation. The following are conditions precedent to the

occurrence of the Confirmation Date: (i) the entry of an order finding that the Disclosure

Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code and

(ii) the proposed Confirmation Order shall be in form and substance acceptable to the Debtors.

(i) Conditions to Effective Date. The Effective Date of the Plan shall not occur unless and

until each of the following conditions has been satisfied:

(ii) Finality of Confirmation Order. The Confirmation Order shall have become a Final

Order.

(iii) Execution and Delivery of Documents. All other actions and documents necessary to

implement the terms and provisions hereof shall have been effected or executed and delivered.

## 13.   JURISDICTION

13.1 <u>Continuing Jurisdiction</u>.  The Bankruptcy Court shall retain and have exclusive jurisdiction over the Debtors' Chapter 11 cases for purposes (a) through (i) below:

(a) To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

(c) To determine any application pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which either of the Debtors' is a party or with respect to which either of the Debtors' may be liable, and to hear and determine, and if need be, to liquidate, any and all claims arising therefrom;

(d) To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date;

(e) To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency on any Order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Code;

(f) To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or obligations arising thereunder;

(g) To consider and act on the compromise and settlement of any Claim against or cause of action by or against either of the Debtors' bankruptcy estate;

(h) To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Code; and

(i) To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

## 14.    MODIFICATION.

14.1 <u>Modification of Plan</u>.  The Plan may be modified at any time after Confirmation and before its substantial Consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Code.  A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection by a writing filed with the Bankruptcy Court.

## 15.    DISCHARGE.

15.1 <u>Discharge and Reversion of Property</u>.

(a) Pursuant to Section 1141(b) of the Code and, except as otherwise dealt with in this Plan, Confirmation of the Plan vests all of the property of each of the Debtors' estates in Reorganized Debtor.  Property of each of the Debtors' estates, which shall vest in Reorganized Debtor shall include, without limitation, all rights and interests in, to and under all patents, trademarks, patent and trademark applications, trade names, licenses, copyrights and inventions.

21

(b) Pursuant to Section 1141(c) of the Code, on the Effective Date of the Plan, the property dealt with by the Plan shall become free and clear of all liens, claims, encumbrances, and interests of creditors, except as otherwise provided for in the Plan or the Confirmation Order.

15.2    Discharge of the Debtors.    Except as otherwise provided in the Plan, all consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever against either of the Debtors; and except as otherwise provided herein, upon the Effective Date, each of the Debtors shall be deemed discharged and released (but only to the extent permitted by Section 1141 of the Code, including specifically Section 1141(d)(3)) from any and all claims, including but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Code; (b) a claim based upon such debt is allowed under Section 502 of the Code; or (c) the holder of a claim based upon such debt has accepted the Plan.    Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of each of the Debtors.    As provided in Section 524 of the Code, such discharge shall void any judgment against either of the Debtors at any time obtained to the extent it relates to a claim discharged, and operate as an injunction against the prosecution of any action against either of the Debtors or its property to the extent it relates to a claim discharged.

15.3    Discharge of Claims.    Except as otherwise provided herein or in the Confirmation Order, (a) the rights afforded in this Plan and the payments and distributions to be made hereunder shall be in complete exchange for, and in full satisfaction, discharge and release of all existing debts and claims of any kind, nature or description whatsoever against either of the

22

Debtors or against its bankruptcy estate, assets or properties, (b) all existing claims against either

of the Debtors shall be deemed to be satisfied, discharged, and released in full upon the Effective

Date, and (c) all holders of claims shall be forever barred and precluded from asserting against

Reorganized Debtor or its assets or properties based upon any act or omission.

## 16.    PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS AND/OR SECTION 506 HEARING, IF NECESSARY

16.1 <u>Cramdown</u>.  If all of the applicable requirements of Section 1129(a) of the Code,

other than [subparagraph 8], are found to have been met with respect to the Plan, the Debtors

will seek Confirmation pursuant to Section 1129(b) of the Code.  For purposes of seeking

Confirmation under the cramdown provisions of the Code, the Debtors reserve the right to

modify or vary the treatment of the claims of any rejecting Class so as to comply with the

requirements of Section 1129(b) of the Code.

16.2    <u>506 Hearing.</u>  If there is a dispute regarding whether or not a holder of a Claim

holds a Secured Claim within the meaning of Section 506 of the Code, then the Debtors will seek

a valuation of the alleged collateral at the time of the Confirmation Hearing.

## 17.    GENERAL PROVISIONS

17.1 <u>Post-Confirmation Actions</u>.  Nothing herein contained shall prevent the Debtors

from taking such action as may be necessary to enforce any rights or prosecute any cause of

action existing on its behalf, which may not have been heretofore enforced or prosecuted.

17.2 <u>Rules of Construction</u>.  Unless otherwise specified, all references to the singular

shall include the plural and vice versa.  The headings in the Plan are for convenience of reference

only and shall not limit or otherwise effect the provisions of the Plan.  Words and terms defined

in Section 101 of the Code shall have the same meaning when used in the Plan, unless a different

definition is given in the Plan. The Rules of Construction contained in Section 102 of the Code shall apply to the construction of the Plan.

17.3 <u>Governing Law</u>. Unless an applicable rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) the internal laws of the State of <u>Connecticut</u> shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as may otherwise be provided in such agreements, documents, and instruments.

17.4 <u>Filing of Additional Documents</u>. On or before the conclusion of the Confirmation Hearing, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

17.5 <u>Severability</u>. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

17.6 <u>Notices</u>. All notices, requests, or demands for payments provided for in the Plan shall be in writing and shall be deemed to have been given when personally delivered by hand, or deposited in any general or branch post office of the United States postal service, or received by telex or telecopier; notices, requests and demands for payments shall be addressed and sent, postage prepaid, or delivered in the case of notices, requests, or demands for payments to the Debtors or the Reorganized Debtors, Ian Phillips, and at any other address designated by the Debtors by notice to each Holder of an Allowed Claim.

With a copy to:

James G. Verrillo, Esq.
Matthew K. Beatman, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT 06605
Telephone: 203-368-4234
Facsimile: 203-367-9678
Email: mbeatman@zeislaw.com

Dated this 28 day of May, 2010.

BEECH TREE CORPORATION d/b/a
COPPER BEECH INN and
CBI ACQUISITION CORPORATION

By: _____
Ian Phillips
Its Owner
Duly Authorized

Attorneys for the Debtors

James G. Verrillo, Esq.
Matthew K. Beatman, Esq.
ZEISLER & ZEISLER, P.C.
558 Clinton Avenue
P.O. Box 3186
Bridgeport, CT 06605
Telephone 203-368-4234